#### IN THE UNITED STATES DISTRICT COURT
#### DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Joseph Bouchette,  )<br> )<br>    Plaintiff,  )<br> )<br> )<br>vs.  )<br> )<br>Martin O'Malley, Commissioner )<br>of Social Security,  )<br> )<br>    Defendant.  )<br>_____)  | Civil Action No. 5:23-002-RMG<br><br><br><br><br>**ORDER** |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on January 12, 2024, recommending that the Commissioner's decision be affirmed. Plaintiff filed objections to the R & R, asserting that the ALJ failed to properly evaluate the medical opinion evidence and the Plaintiff's subjective complaint of severe pain. (Dkt. No. 21). The Commissioner filed no response to Plaintiff's objections. For reasons set forth below, the Court reverses the decision of the Commissioner and remands the matter to the agency with instructions to award benefits.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is made.  The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge.  28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action."  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard.  *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians.  20 C.F.R. § 404.1527(b).  This includes the duty to "evaluate every medical opinion we receive."  § 404.1527(c).  Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the

medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. § 404.1527(c)(1)-(5). The Commissioner pledges that "[g]enerally we give more weight to opinions from . . . treating sources" and more weight to the opinions of an examining source than a non-examining source. § 404.1527(c), (c)(1). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, since the Commissioner recognizes that the non-examining and non-treating expert has "no treating or examining relationship" with the claimant, he pledges to consider their supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources."

§ 404.1527(c)(3).[1]

## Factual Background

Plaintiff's applications for Social Security disability benefits have had a difficult and protracted history. Plaintiff initially filed for disability benefits in June 2015, asserting an onset date of October 19, 2014.[2] After a considerable delay, he received an unfavorable decision from an Administrative Law Judge (ALJ) on April 24, 2018 indicating that although Plaintiff suffered from multiple severe impairments, including Complex Regional Pain Syndrome, he retained the residual functional capacity to perform less than the full scope of sedentary work. (Dkt. No. 7-2 at 13, 16). This represented the lowest level of function that a claimant could have without generally being deemed disabled under the Social Security Act.

After an unfavorable review by the Appeals Counsel, Plaintiff timely filed an appeal with this Court in May 2019. This Court reversed the Commissioner's decision and remanded the matter to the agency because no fact finder had reviewed and reconciled with other record evidence highly probative new evidence supportive of Plaintiff's claim after this new evidence was submitted to the Appeals Council. *Bouchette v. Saul*, C.A. No. 5:19-1319, Dkt. No. 33 at 5-6 (D.S.C. 2019). This newly submitted evidence included a Functional Capacity Evaluation conducted on February 13, 2018 by Robyn Szablewski, a physical therapist. A Functional Capacity Evaluation is a highly structured validated series of assessments which is conducted

---

[1] § 404.1527 was rescinded for applications for disability filed after March 27, 2017. Since Plaintiff's application predated the new regulation, § 404.1527 applies in this case.

[2] The ALJ stated in the decision under appeal that Plaintiff did not engage in substantial gainful activity since September 30, 2014, "the alleged onset date." Dkt. No. 7-8 at 20). The Court relies on this finding to set September 30, 2014 as Plaintiff's onset date.

over many hours by a physical therapist. Plaintiff's Functional Capacity Evaluation documented that Plaintiff was unable to lift 10 pounds, even occasionally, or to stand or walk more than a few minutes at a time. *Id*. These results, if credited, would normally render a claimant unable to perform sedentary work and, thus, disabled under the Social Security Act.[3]

The newly presented evidence also included an office note of Plaintiff's treating physical medicine and rehabilitation specialist, Dr. Christopher Merrell, prepared on February 28, 2018, a little over two weeks after the completion of the Functional Capacity Evaluation. Dr. Merrell's note stated that plaintiff was experiencing "throbbing, sharp, constant" pain that was, "not changing." Dr. Merrell documented that Plaintiff had "severe pain level 8/10." (Dkt. No. 7-13 at 86).

In light of Plaintiff's very marginal residual functional capacity documented in the ALJ's original decision, the highly significant findings on the Functional Capacity Evaluation, and the treating doctor's description of Plaintiff's severe pain in his February 28, 2018 note, it appeared likely that Plaintiff would be awarded disability benefits after the Court reversed the ALJ's

---

[3] The Functional Capacity Evaluation included an assessment of grip strength, dexterity, handling, fitness, mobility, sustained activities, positional tolerances, and strength testing. (Dkt. No. 7-13 at 23-46). The evaluation determined that Plaintiff had significant physical impairments secondary to his diagnosed Complex Regional Pain Syndrome which significantly impacted his capacity to perform sustained work. These included an inability to lift up to ten pounds due to impairments with grip strength and an inability to perform a floor to waist lift or a waist to shoulder height lift. Plaintiff was also found to be unable to demonstrate static standing or dynamic standing for up to 15 minutes. Plaintiff's longest duration to stand was documented at two minutes and 58 seconds. The Evaluation further documented that Plaintiff was able to ambulate only for four minutes and 17 seconds "with significant instability and use of wall and furniture to attempt and stabilize, frequent rest breaks required . . . ." (*Id*. at 25).

decision and remanded the case to the agency for further proceedings consistent with the order. This was not to be the case.

On remand, the Appeals Council noted that Plaintiff had filed a subsequent claim of disability on May 21, 2019 and directed the ALJ to consolidate the claims in further decisions. The ALJ issued a second adverse opinion on February 3, 2021, again finding that Plaintiff retained the residual functional capacity to perform less than the full scope of sedentary work. (Dkt. No. 7-9 at 97). The Appeals Counsel vacated the order and sent it back to the ALJ because of a failure to follow the instructions to consolidate the original claim with the later filed 2019 claim.

The ALJ issued a third decision on March 23, 2022, again finding that Plaintiff retained the residual functional capacity to perform less than the full scope of sedentary work. By this time, the record contained several new sources of information from multiple physicians which were consistent with the findings of the Functional Capacity Evaluation and the opinions of Dr. Merrell.

Dr. Merrell, Plaintiff's primary treating doctor, had long diagnosed Plaintiff with Complex Regional Pain Syndrome secondary to a crush work-related shoulder injury. Complex Regional Pain Syndrome is a complicated disease process that is thought to represent a dysfunction of the sympathetic nervous system and can result in severe, unremitting pain. The condition can be difficult to diagnose because there is no single test or radiographic study to confirm its presence, and a patient's symptoms can wax and wane. The Social Security Administration adopted SSR 03-2P, 2003 WL 22399117 (2003) to provide support for claimants with Complex Regional Pain Syndrome and to advise ALJs of appropriate standards for

adjudicating this complicated, potentially disabling condition. The Rule specifically noted the often transitory nature of a patient's pain symptoms, observing that the "signs may be present at one examination and not appear at another." *Id.* at *1, 4. The Rule recognized that treating doctors' opinions were of particular importance and "are entitled to deference," particularly their opinions about the ability of a patient with Complex Regional Pain Syndrome "to function in a sustained manner in performing work activities." *Id*. at *5, 7. The Rule further provided that evidence from third party non-medical sources, including physical therapists, family members, and neighbors, should be considered because such evidence was often "critical" in determining a claimant's credibility. *Id.* at *7.

Dr. Merrell submitted to the Social Security Administration a statement specifically addressing his opinions concerning the findings on the Functional Capacity Evaluation:

> Mr. Bouchette . . . had a functional capacity evaluation performed in February 2018 which found he was limited to performing less than sedentary work. The results were noted to be near valid and I would agree that this was a valid test. The FCE assessment noted that he was only able to stand for about 3 minutes (with dynamic and static standing) before needing to sit down. He was unable to lift 10 pounds from either floor to waist or waist to shoulder. He was unable to carry 10 pounds. The lifting and carrying problems that Mr. Bouchette experienced was due to lack of grip using his left upper extremity. I agree with these functional limitations.

(Dkt. No. 7-13 at 199).

The supplemented record further contained a new consultant's independent orthopaedic evaluation that was conducted on July 12, 2020 by Dr. Pravin Patel. Dr. Patel documented significant abnormalities in Plaintiff's range of motion in his cervical spine, lumbar spine, shoulder, and hip. (Dkt. No. 7-13 at 322). Plaintiff informed Dr. Patel that a spinal stimulator,

which had been implanted in 2017, "did not help much." He further told Dr. Patel that he felt like his left side, where he had suffered the crush shoulder injury, felt weaker and he "falls frequently." His last fall had been two days before the examination. (*Id*. at 323). Dr. Patel noted that he was unable to test passive range of motion because of the Plaintiff's complaints of pain and that Plaintiff was "barely" able to perform any range of motion in his hips. (*Id*. at 325). Plaintiff was documented with positive straight leg raises on the left, often associated with spinal abnormalities. Further, Dr. Patel found Plaintiff's gross manipulation skills "abnormal" and "shows lot of struggle to lift 1 gallon full bottle with the right hand and does not perform the gross manipulation with the left hand." (*Id*.). Dr. Patel's concluding impressions included "left arm and left leg pain due to complex regional pain syndrome" and "neck and lower back pain due to crush injury." (*Id*. at 326).

Plaintiff was sent for an independent vocational rehabilitation physical on October 31, 2019 conducted by Dr. David Moon, which documented many of the physical findings found in the Functional Capacity Evaluation. These included persistent pain (8/10) that "has just not gotten any better" and that his pain worsens with walking and sitting. Dr. Moon noted Plaintiff's complaint that his pain was primarily in his left upper extremity. Dr. Moon further noted that Plaintiff "cannot tolerate numerous medications" and "he really just does not want to take medicines other than Xanax." Finally, Dr. Moon noted Plaintiff "does some crying, blue moods" and suggested further mental evaluation. (Dkt. No. 7-13 at 269-271).

Plaintiff underwent a new independent mental status examination on June 23, 2020 performed by Rebecca Sorrow, PhD, a licensed psychologist. She documented a history of Plaintiff having "problems sleeping due to pain and said that he sleeps about 3 hours at a time.

Appetite is poor." Plaintiff "described his mood as 'real depressed' and said that he cries sometimes." (Dkt. No. 7-13 at 319). After conducting a full mental health evaluation, Dr. Sorrow diagnosed Plaintiff with "major depressive disorder, single episode, moderate." She explained that from "the information and findings gathered from this evaluation," Plaintiff had "symptoms of depression that include sleep and appetite disturbance, sad mood, crying, and poor memory and concentration." (*Id*. at 320).

Plaintiff testified at an administrative hearing on January 12, 2021. Plaintiff explained that he suffered from severe shoulder and back pain and had trouble gripping objects of any type. He explained that "some mornings, when I first get up, my shoulder hurts so bad, and like this morning, if its raining. My wife actually had to help me get my pants on and my shirt." (Dkt. No. 7-8 at 82). He further testified that "some days, when it's cold outside, and it just hurts so bad on days like this that I cannot move, you know, I'm stiffed up." (*Id*. at 77). Plaintiff explained that his grip strength is so weak he has to eat on paper plates because he tends to break dishes. The rest of the family eats on regular plates. (*Id*. at 84). Plaintiff testified that "I can't walk too far without having to sit down" and had a bad fall the prior Thanksgiving, hitting his head. (*Id*. at 83-84).

Despite the new record evidence of the Functional Capacity Evaluation, Dr. Merrell's statement that the findings of the new evaluation were valid and reliable, reports of three independent consultants documenting significant physical and mental impairments, and Plaintiff's testimony corroborating the findings of the various medical professionals since the original 2018 decision, the ALJ continued to find Plaintiff maintained the residual functional capacity of less than the full scope of sedentary work. The ALJ gave little weight to the

Functional Capacity Evaluation and was dismissive of Dr. Merrell's findings and opinions because he had opined that Plaintiff was not capable of performing sedentary work which was an issue reserved for the Commissioner and his opinions were allegedly inconsistent with some of his office notes. (Dkt. No. 7-8 at 29-31). The ALJ explained that she gave "little weight" to the opinions of Physical Therapist Szablewski and Dr. Merrell because "they are not consistent with the objective evidence in the record." (*Id*. at 30). Dr. Patel's findings, as an independent orthopaedic consultant, were dismissed because they did not "suggest that the claimant is unable to perform a reduced range of sedentary work." She further observed that Dr. Patel "did not provide any vocational limitations in his assessment." (*Id*. at 28, 31). Dr. Sorrow's troubling mental health consultant's report was rejected because she "examined the claimant on only one occasion, and her limited interaction with the claimant renders her opinions less persuasive." (*Id*. at 31).

The ALJ was also dismissive of the testimony of Plaintiff, suggesting that he was exaggerating the extent of his pain and discomfort. She noted that after a spinal cord stimulator was implanted in 2017, there was some documentation of improvement. She also noted findings that Plaintiff was found at times to have normal motor strength and intact sensation. The ALJ also found it significant that Plaintiff was not on narcotic pain medications, instead relying on Terocin pain patches prescribed by his physician. She also was dismissive of his history of falls, noting that none had required emergency room treatment or hospitalization. (*Id*. at 25-28).

The ALJ did, however, give "great weight" to the State Agency consultants, although there was no citation to any portion of the record, identification of the specific physicians

referenced, the substance of their opinions or the record support for any opinion rendered.[4] Of course, these State Agency consultants were only chart reviewers who never laid eyes on Plaintiff. None of these State Agency consultants appear to have addressed the findings of the Functional Capacity Evaluation or Dr. Patel's orthopaedic consultant's report and there was no attempt by the State Agency consultants to reconcile these new findings with other record evidence. (Dkt. No. 7-8 at 13-17, 28-33; Dkt. No. 7-9 at 55-59).

The ALJ concluded in her third decision that because Plaintiff retained the residual functional capacity to perform less than the full scope of sedentary work, he was not disabled under the Social Security Act. From this final decision, Plaintiff again appeals to this Court.

**Discussion**

It is important at the outset to note how close the parties actually are regarding Plaintiff's capacity to sustain competitive work. The ALJ has found in all three decisions that Plaintiff suffers from two severe impairments: Complex Regional Pain Syndrome and degenerative disc disease. (Dkt. No. 7-8 at 20). The ALJ found that these severe impairments reduced Plaintiff's residual functional capacity to less than the full scope of sedentary work, the lowest level of function a claimant can have and not generally be deemed disabled under the Social Security Act. On the other hand, Plaintiff asserts he is disabled under the Social Security Act because he is unable to perform work at a sedentary level.

The Commissioner has long recognized that an "RFC less than a full range of sedentary

---

[4] State Agency consultants are in house physicians which provide support for the Social Security Administration. Their reviews are based entirely on the medical chart and they have no direct contact with the claimant. They are different from examining consultants, who are normally physicians in private practice who conduct examinations at the request of the Social Security Administration.

work reflects very serious limitations resulting from an individual's impairment(s) and is expected to be relative rare." Sedentary work "represents a significantly restricted range of work" and reflects a finding that a claimant's "medical impairments" have resulted in "very serious functional limitations." SSR 96-9P, 1996 WL 374185, at *3 (July 2, 2009). "The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools." If a person is unable to perform these tasks, "the sedentary occupational base will be eroded." *Id*. at *3, 6. Further, a sedentary job requires the employee to be able to walk and stand up to one third of the work day and would generally total no more than two hours in an eight hour work day. If an employee is limited to standing or walking "only a few minutes during the work day," such a finding "would erode the unskilled sedentary occupational base significantly. *Id*. at *3, 6. Sedentary work also requires the ability to sit for six hours of an eight hour day for at least two hour intervals. The inability to do this would erode the occupational base. *Id*. at *3, 6. Notably, tests performed in conjunction with the Functional Capacity Evaluation indicate that Plaintiff was unable to meet these basic performance standards for sedentary work.

      The ALJ's third decision methodically dismisses the new findings contained in the Functional Capacity Evaluation, Dr. Patel's physical assessments in his consultant's report, Dr. Merrill's opinions that the Functional Capacity Evaluation accurately reflects Plaintiff's severe limitations in physical performance, the mental health consultant report of Dr. Sorrow, and the vocational assessment consultant report of Dr. Moon. The reasons set forth by the ALJ to dismiss these findings and opinions are plainly in violation of the Treating Physician Rule and the Commissioner's obligation to consider all medical evidence and to provide an adequate

explanation for accepting or rejecting relevant opinion evidence.

The ALJ's three opinions are all premised on the assumption that after Plaintiff had a spinal cord stimulator surgically implanted in 2017, his condition markedly improved. (Dkt. No. 7-8 at 30). There are indeed references at various times shortly after the placement of the spinal cord stimulator that Plaintiff was briefly obtaining some pain relief. But the new medical reports make clear that from February 2018 forward Plaintiff was complaining of severe pain unrelieved by the spinal cord stimulator. (Dkt. No. 7-13 at 263, 323). The premise that Plaintiff markedly improved continuously after the 2017 placement of the spinal cord stimulator is not supported by substantial evidence, most notably the new reports given little weight by the ALJ.

The ALJ gave "little weight" to the "opinions" of PT Szablewski because they are allegedly "not consistent with the objective evidence of record." (Dkt. No. 7-8 at 30). It is important to differentiate between findings of a diagnostic test and an opinion of a provider. The physical therapist conducted a number of assessments, including tests related to Plaintiff's grip strength, dexterity, handling, fitness, mobility and positional tolerances. These tests produced objective results that were duly documented in the Functional Capacity Report. These test results constitute objective evidence and must be weighed with other record evidence. The dismissal of these test results as opinion evidence constitutes legal error.

The physical therapist, at the conclusion of the evaluation, stated that Plaintiff's testing demonstrated that he is not capable of performing sedentary work. This conclusion can fairly be described as the therapist's opinion, and the ALJ is correct in stating that a physical therapist is not an "acceptable medical source" whose opinions are subject to evaluation under the § 404.1527. The fact that the physical therapist offered an opinion at the conclusion of the

evaluation, however, does not render the testing results a nullity that can simply be ignored by the ALJ.

The ALJ also gave "little weight" to the opinions of Dr. Merrill, again on the basis that they were "not consistent with the objective evidence of record." (Dkt. No. 7-8 at 30). One of Dr. Merrell's most significant opinions is that the results of the Functional Capacity Evaluation are valid and reliable. This opinion is based, at least in part, on the Functional Capacity Evaluation, which is made up of objective testing results. Thus, it makes no sense to say that Dr. Merrell's opinion about the validity of the Functional Capacity Evaluation is not consistent with "objective evidence." Moreover, Dr. Merrell, as a treating specialist physician, is an "acceptable medical source" and his opinions are entitled to the highest level of deference under the Treating Physician Rule. This is particularly true in cases where a disability is based primarily upon Complex Regional Pain Syndrome, where agency rules plainly state that the opinions of treating physicians are "critical." SSR 03-2p. Rather than provide deference to the opinions of Dr. Merrell or evaluate his opinions under the standards of the Treating Physician Rule, the ALJ dismisses his opinions as "not consistent with objective evidence of record."[5]

The ALJ was also dismissive of the new reports provided by consultants who are normally brought in by the Social Security Administration to provide an independent assessment of a claimant's condition. These include the Comprehensive Orthopedic Disability Medical Exam of Dr. Patel, the Vocational Rehabilitation History and Physical of Dr. Moon, and the

---

[5] The ALJ is correct in noting that Dr. Merrell's opinion that Plaintiff is disabled under the Social Security Act is not entitled to any special deference since that is a determination left to the Commissioner. This does not provide the basis, however, to reject all other opinions of Dr. Merrell.

Mental Status Examination of Dr. Sorrow. (Dkt. No. 7-13 at 269-71, 318-21, 322-35). The Court has commonly seen the Commissioner make reference to such consultant reports when they challenge the findings and opinions of a claimant's treating physician. That is not the case here where the consultants' reports tend to support Plaintiff's claim of disability and the opinions of the treating physician. Instead, the ALJ dismissed Dr. Sorrow's troubling findings because she examined Plaintiff "on only one occasion" and Dr. Patel's findings of limited range of motion as insignificant because he did not provide "any vocational limitations in his assessment." (Dkt. No. 7-8 at 31). While it is true that a consultant's report has certain limitations since the medical provider has no long term treatment relationship with the claimant, the consultant reports here appear highly probative because they corroborate the opinions of Dr. Merrell, the findings of the Functional Capacity Evaluation, and the testimony of Plaintiff.

      The failure of the ALJ to appropriately evaluate all opinions under the Treating Physician Rule is most glaringly obvious in the finding that the opinions of the State Agency consultants were entitled to "great weight." The opinions of these chart reviewers are to be measured by the standards of the Treating Physician Rule, § 404.1527(c), which includes such factors as the length of the treatment relationship, frequency of examinations, the supportability of findings and opinions, and the whether the medical source is a specialist. The regulation further provides that since "nonexamining sources have no examining or treating relationship . . ., the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions" and whether "these medical opinions consider all of the pertinent evidence of your claim, including medical opinions of treating and other examining sources." 404.1527(c)(3). Further, the adjudicator is required to "explain the weight give to

opinions from these sources or otherwise ensure that the discussion of the evidence . . . allows a claimant and subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  § 404.1527(f)(2).

Despite these clearly established regulatory standards for evaluating non-examining opinion evidence, the ALJ provided only a brief, highly truncated collective assessment of opinion testimony of the State Agency consultants, which stated in its entirety:

> I have assigned great weight to the physical assessments of the State Agency consultants, as they are generally consistent with other evidence of record and the evidence of the claimant's spinal pain and complex regional pain symptoms.

(Dkt. No. 7-8 at 31).

The State Agency consultants are not identified and there is no statement of their opinions or any effort to reconcile those opinions with other conflicting record evidence, including the newly produced Functional Capacity Evaluation, Dr. Merrell's statement endorsing the findings of the evaluation, and the three newly produced consultant reports.    Indeed, there is no evidence that any of these newly produced reports were even reviewed by the State Agency consultants.
The finding of the ALJ that the opinions of the State Agency consultants are "generally consistent with the other evidence of record" is certainly not supported by substantial evidence, as is plainly obvious by newly produced medical records referenced above.

Based on the foregoing, the decision of the Commissioner (Dkt. No. 7-8 at 17-34) is reversed.  The ALJ  failed to apply the standards of the Treating Physician Rule, the Rule concerning the evaluation of cases involving Complex Regional Pain Syndrome, SSR 03-2P, and the mandate to consider all relevant evidence in the record.  As set forth above, numerous

statements made to justify providing little to no weight to the opinions of Drs. Merrell, Patel, Sorrow, and Moon and the findings of the Functional Capacity Evaluation are not supported by substantial evidence.

The only remaining question is whether the Court should remand the case a second time for further proceedings or with instructions to award benefits. The Court has already remanded this case once with instructions to address the findings of the Functional Capacity Evaluation. The ALJ failed to do this or to properly weigh and consider newly produced statements from Dr. Merrell and three independent medical consultants consistent with the newly performed evaluation and the testimony of Plaintiff. This Court's general practice is to remand to the agency for further proceedings but it is well settled that the Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by a district court is appropriate where, as here, the record is fully developed and it is clear the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanairi*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Brown v. Kijakazi*, No. 2:31-353-RMG, 2021 WL 5276031, at *2 (D.S.C. Nov. 12, 2021). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim. *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984).

Plaintiff first for filed Social Security benefits on October 19, 2015, more than 9 years ago. The ALJ's decision has now been reversed three times (twice by this Court and once by the Appeals Council). Enough is enough. The time to bring this case to a close has now arrived.

The Court **REVERSES** the decision of the Commissioner pursuant to Sentence Four of 28 U.S.C. § 405(g) and **REMANDS** the matter to the Commissioner **WITH INSTRUCTIONS**

**TO AWARD BENEFITS FROM PLAINTIFF'S ONSET DATE OF SEPTEMBER 30, 2014.**

**AND IT IS SO ORDERED**.

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

February 12, 2024
Charleston, South Carolina